REGAN, Judge.
Plaintiffs, Ralph Mounieou, Jr., and his wife, Mrs. Beverly K. Mounieou, instituted this suit in the amount of $20,453.00, against the defendants, New Orleans Public Service, Inc., and Southern Heater Company, Inc., to recover as husband and head and master of the community, expenses incurred by him, amounting to $5,403.00, and damages for personal injuries in the amount of $15,050.00, allegedly received by Mrs. Mou-nicou as the result of an accident in the intersection of N. Claiborne and Orleans Avenue, on August 20th, 1948, at 10:20 a. m. between an omnibus, in which she was a passenger, and a truck.
Defendants answered and admitted a “slight contact” between the omnibus and the truck, but denied that Mrs. Mounieou suffered any injuries as a consequence thereof, and each defendant further answered that'“the slight contact” which did occur was caused by the negligence of the other defendant.
There was judgment below in favor of defendants dismissing plaintiffs’ suit. Hence this appeal.
The record reveals, with remarkable clarity, considering that it contains “expert medical opinions”, the factual issue herein involved of whether Mrs. Mounieou, a passenger in the omnibus, suffered any injuries whatsoever as a result of' the accident in which defendants were admittedly involved. If she did, it matters not how insignificant her injuries might be, then our jurisprudence, tracking this fact in logical sequence, would permit the recovery of damages from either or both defendants inexorably as a matter of law.
The arrangement of the seats contained in the combustible motor driven omnibus of the New Orleans Public Service, Inc., in which Mrs. Mounieou was a passenger on the day of the accident, is of the usual, and conventional design with which most of us are familiar. She was seated on the first cross seat on the right front or window side of the omnibus, which is in the rear of' the longitudinal seat on the right front side of the omnibus, colloquially known as the “beauty seat” and directly in front of the seat occupied by plaintiff there existed a metal tubular railing. The omnibus was driving in Orleans Avenue towards the river and came to a stop in Orleans, where it intersects No. Claiborne Avenue for the purpose of permitting passengers to board and alight. ’ While the omnibus was stopped a truck of the co-defendant, Southern Heater Company, Inc., also driving in Orleans Avenue, in the same direction, approached the intersection and came to a stop slightly to the left side of the omnibus. The operator thereof intended to make a right turn into N. Claiborne Avenue to join the traffic moving towards Canal Street. There is a dispute, which is of no significance, as to whether the omnibus struck the truck or vice versa, in any event, simultaneously as the truck initiated its turn, and the omnibus, started to move forward, the right side of the truck came into “slight contact” with the “metal ventilator” or “rear view mirror” of the omnibus. It appears from the record that the truck moved a distance of approximately two to three feet and that the omni *407 bus was at a stop at the moment of contact. There was no “collision” between the bus and the truck in the ordinary and accepted use of the word “collision”, the two vehicles merely rubbed together. The only damage to the bus was to the “metal ventilator” thereof and there was no damage to the truck.
Plaintiffs contend that as a result of the collision Mrs. Mounicou was thrown forward and struck the metal tubular railing in the front of the seat with her abdomen, causing ultimately the premature birth of her child; immediately after the collision she began, for the first time, to lose blood and was bedridden until the birth of her child; that at the time of the accident, on August 20th, 1948, she was about five months pregnant and that her child was born on October 21st, 1948, two months later. Plaintiffs also claim that as a result of the injury Mrs. Mounicou could not bear additional children.
Mr. Mounicou claimed damages for expenses incurred by him by virtue of the accident in the amount of $403.00 and an additional item of $5,000.00 damages by reason of the baby being born prematurely.
Mrs. Mounicou claimed damages for two weeks’ loss of salary $50.00, pain and suffering $5,000.00, damages by reason of the baby being born prematurely $5,000.00 and permanent injuries preventing the having of other children $5,000.00.
At the inception of the trial in the court, a qua, counsel for Mrs. Mounicou abandoned her original claim for damages resulting from her alleged inability to bear other children, and the record discloses that Mr. Mounicou did not appear to testify at the trial in pursuance of his claim for damages resulting from the alleged premature birth of his child.
We have carefully analyzed the transcript and the conclusions predicated thereon by the trial judge in his written reasons for judgment, and we are convinced that these reasons cover the issues herein involved so fully that we adopt them as our own.
“Plaintiffs, Mr. and Mrs. Ralph Mouni-cou, Jr., bring this suit against the New Orleans Public Service, Inc., and Southern Heater Company, Inc.,- — -the husband for expenses incurred as head and master of the community and the wife for injuries allegedly received by her as a passenger in the City Park bus of the New Orleans Public Service, Inc., in an alleged collision of said bus with a truck of the Southern Heater Company, Inc.
“The gravamen of plaintiff’s (Mrs. Moun-ieou’s) cause of action is contained in Article IV of 'her petition, which reads as follows:
“ ‘As a result of said collision your second named petitioner (Mrs. Mounicou) was thrown forward from her seat and struck the railing in the front of the bus causing the serious and permanent injuries 'hereinafter set forth in details.’
“This case involves solely a question of fact.
“The court observed very carefully the litigants and the witnesses in the court room and on the witness-stand. Counsel for the New Orleans Public Service, Inc., made available to the court a bus of the same type, design and description as that in which Mrs. Mounicou was riding at the time of the alleged accident. Counsel and litigants and the court repaired to the bus, which was parked on the Conti Street side of the Courthouse, and Mrs. Mounicou was seated on the front seat, being the same location in which she was at the time of the alleged accident, and she was examined by counsel. Mrs. Mounicou demonstrated to the court the manner in which she contended she was injured. Actual measurements were taken. Mrs. Mounicou testified and demonstrated to the court the manner in which she was thrown from her seat. The seat and railing are shown on the photograph marked ‘Exhibit P-S 6’, as well as on photograph marked ‘Exhibit P-S 7’.
“The court has given very serious and careful consideration to this case and can only reach the conclusion that Mrs. Mouni-cou was not thrown forward from her seat and did not strike the rail in front of her. Even if the bus had stopped suddenly and she was thrown forward from her seat, she could not have struck her abdomen at the point indicated by her because the actual *408 demonstration showed that she would have struck herself on the neck at the point commonly referred to as the ‘Adam’s apple’. It must he remembered that Mrs. Mounicou alleges in Article IV the manner in which she was injured, and in her actual demonstration in the bus she demonstrated to the court how she was thrown forward and struck the rail, and in so doing and moving forward in that demonstration, the part of her body that touched the rail was her neck at the point of the ‘Adam’s apple’. There is no evidence in the record, other than that of Mrs. Mounicou, that she suffered a blow or any trauma to her abdomen. All the evidence is to the effect that there was no-sudden stopping or jerking which would have -caused anyone to be thrown forward. The witness, Linson, who< was produced by the Public Service and who was a passenger in the bus, is the only one who testified that the bus had slightly moved up but that it stopped and was at a stop when the truck of the Southern Heater Company contacted and bent the ventilator on the Public Service bus. But his evidence is very positive to the effect that there was no jolting or jerking of the bus which could have caused Mrs. Mounicou to be thrown forward.
“Mrs. Mounicou is a lady of short stature and considerably nervous. From th-e inception of the trial her nervousness was plainly evidenced by her continuous twisting and twirling of a handkerchief in her hand. In fact, a mere observation of Mrs. Mouni-cou is sufficient to indicate that she is a person of very nervous disposition. Probably the fact that there was a ‘tinkling’ of part of the ventilator of the bus when it came in contact with the truck, coupled with the fact that the driver of the bus asked for witnesses and the bus was delayed for a short time and then was moved over to the neutral ground, when it was again delayed for a short time, caused Mrs. Mounicou to become a little nervous, which did not contribute to her condition and injuries. Certainly, I cannot from the evidence in this case come to the conclusion that she was thrown from her seat, struck in the abdomen and injured as she claims. The manner in which she claims she was injured is, to me, a figment of her imagination, because the actual demonstration speaks louder than the words of any of the witnesses, including those of plaintiff, and, of course, Mrs. Mou-nicou had given the demonstration and ‘stuck’ to her story as contained in the petition respecting the manner in which the accident took place.
“Under the circumstances, therefore, the court must hold both defendants free of any liability herein.”
The court, a qua, as evidenced by the foregoing reasons for judgment, finds as a fact, and after a careful analysis of the record, we are in full accord therewith, that plaintiff, Mrs. Mounicou, suffered no trauma nor blow upon her abdomen as a result of an accident between the vehicles, owned and operated by the defendants herein, which caused or induced injuries resulting in the premature birth of her child; therefore, any medical testimony appearing in the record to the effect that a blow on the abdomen received in the aforesaid accident, caused the premature birth of her child, was entirely predicated upon what Mrs. Mounicou, apparently in all sincerity, had related to the medical expert or experts, who had no actual knowledge, prior to the trial of the details of the accident; or their opinions were predicated upon the hypothesis of what would be the probable result of a blow upon the abdomen by a woman five months pregnant. In the final analysis, their opinion was not predicated upon the actual facts which transpired on the date on which the accident occurred.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.